UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JEREMY P. HOPKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-304 |
| | ) | |
| v. | ) | |
| | ) | |
| RANDY SELLERS, et al., | ) | Chief Judge Curtis L. Collier |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM**

Before the Court are motions for summary judgment filed by Defendants Randy Sellers ("Sellers), Steven Bebb ("Bebb"), and Judge Bill Baliles ("Judge Baliles;" collectively, "Defendants") (Court File Nos. 66, 64, 62). Plaintiff Jeremy Hopkins ("Plaintiff") has responded to each motion (Court File Nos. 70, 68, 69), and has also filed a "consolidated response" (Court File No. 71), as well as numerous supplemental responses relating to all three motions for summary judgment (Court File Nos. 72-76). Defendants have replied (Court File Nos. 80, 77, 78).[1] For the following reasons, the Court will **GRANT** Defendants' motions for summary judgment (Court File Nos. 66, 64, 62).

### I.  FACTS & PROCEDURAL HISTORY

####  A.  Relevant Facts

---

[1]Sellers did not timely file his reply brief (Court File No. 80), and Plaintiff has moved to strike it on this basis (Court File No. 81). The Court denies this motion. Plaintiff, for his part, did not finish filing his supplemental responses to the motions for summary judgment (supplemental responses which, by the way, were not filed with approval by the Court pursuant to Local Rule 7.1(d)) until one week after the deadline (*see* Court File No. 76). The Court determines it is in the interest of justice and efficient adjudication of this case to consider Sellers' reply brief, along with Plaintiff's voluminous filings.

The facts in this case are not materially in dispute, though their characterization is. The backdrop to this action is a contentious divorce and child custody dispute between Plaintiff and his estranged wife, Ms. Hopkins. The divorce case commenced in the Circuit Court of Bradley County, Tennessee in January 2007. On February 19, 2008, a Bradley County judge issued a temporary order for parenting time, to remain in effect for 60 days, establishing Ms. Hopkins as the primary residential parent, and setting visitation periods for Plaintiff (Court File No. 66-1, p. 8). On May 27, 2008, a hearing was held before Judge Buchanan of Bradley County to determine, among other issues, a continued temporary parenting schedule. At the hearing, Judge Buchanan assigned Plaintiff specific parenting dates for the months May through October 2008. In each month, Plaintiff was assigned approximately four to five days with his child, while Ms. Hopkins retained primary possession of the child. Judge Buchanan further stated that if the case was not resolved by October 2008, the same basic co-parenting pattern would continue "until this case is concluded" (Court File No. 80-2, p. 16). Following the hearing, Judge Buchanan entered a written order, memorializing the May-through-October parenting schedule that was established at the hearing (Court File No. 66-1, p. 10). This order did not reiterate Judge Buchanan's oral statement in the hearing that, should the case not be concluded by October 2008, the same basic allocation of parenting time would continue indefinitely. However, the order did not contain any language contravening Judge Buchanan's statement to this effect.

The divorce case was not, in fact, resolved by October 2008. In and about November 2008, conflict arose between Plaintiff and Ms. Hopkins (who was represented by her lawyer, Defendant Sellers) regarding the timing and logistics of Plaintiff's visitation with his daughter over the Thanksgiving holidays. Essentially, both Plaintiff and Ms. Hopkins were willing for Plaintiff to take possession of his child on November 25, 2008. However, as e-mails in the record demonstrate,

Plaintiff was vague and arguably evasive about his willingness to allow Ms. Hopkins to regain possession of the child – repeatedly confirming the pickup date, but failing to confirm or deny the proposed drop-off date of November 29, 2008 (*see id*. at pp. 18-31). Eventually, Ms. Hopkins received what appeared to be confirmation Plaintiff would return the child to her on November 29, 2008 (*see id*. at p. 31). Ms. Hopkins delivered the child to Plaintiff on November 25, 2008. However, Plaintiff did not return the child to Ms. Hopkins on November 29, 2008.

On December 3, 2008, Ms. Hopkins filed an Affidavit of Criminal Complaint with the Polk County General Sessions Court, alleging Plaintiff had committed the crime of custodial interference (*see id.*. at pp. 1-3). A deputy clerk of court reviewed the affidavit and found probable cause to issue a criminal summons. The criminal summons instructed Plaintiff to appear at General Sessions Court in Ducktown, Tennessee, on December 16, 2008, for an arraignment hearing. It is the events of this hearing which give rise to the present litigation. At the hearing, Defendant Judge Baliles presided, Assistant District Attorney ("ADA") Drew Robinson appeared on behalf of the State of Tennessee, attorney Jeff Miller appeared on behalf of Plaintiff, and Sellers appeared on behalf of his client, Ms. Hopkins, the purported victim of the alleged custodial interference. The details of the beginning of the hearing are foggy, since the Judge Baliles did not turn on the recorder until it became apparent the hearing would not be a smooth one. What is clear is that the substance of the hearing was Plaintiff's oral motion to quash the summons, and Sellers, rather than the ADA, took the lead in arguing to the court that the criminal summons should not be quashed.[2]

Ultimately, Judge Baliles determined it was "very clear" there was probable cause for the criminal summons to have issued (*see* Court File No. 66-8, p. 5). However, despite probable cause

---

[2]According to Sellers, he "took the lead" (though he would not characterize his role thusly) at the behest of Judge Baliles, who wished to hear from Sellers since Sellers was more familiar than the ADA with the complicated custodial arrangements between Plaintiff and Ms. Hopkins.

for the summons, Judge Baliles also articulated misgivings about the wisdom of having the case prosecuted in the criminal arena rather than being handled in the domestic arena ("the probable cause is very clear, but whether or not we should go further is not so clear") (*id*.). As Judge Baliles later explained at deposition, "in this particular case there were so many emails and so many orders that if this case had gone on to court that [sic] it would be easy for any attorney to confuse or hang a jury or whatever. It's just the type case [sic] that you would never get a conviction on" (Court File No. 80-7, p. 3). Judge Baliles expressed these misgivings to Plaintiff's counsel, the ADA, and Sellers, and instructed the parties to brief the issue of whether or not, despite probable cause, the summons ought to be quashed and the criminal case dismissed. In the meantime, he continued the matter and set a preliminary hearing for January 20, 2009 (Court File No. 66-8, p. 6). Plaintiff was told that Tennessee law required him to "book himself" within ten days (*see id*. at p. 7; 71-7, p. 8). Plaintiff was never incarcerated, detained, made to pay bond, or placed under any other restrictions.

Following the hearing, Sellers submitted a brief arguing against quashing the summons. The brief was captioned "Memorandum of Law for the State of Tennessee by the Victim, Elisabeth Hopkins" (Court File No. 71-9, p. 34). The State of Tennessee did not submit an independent brief. On January 14, 2009, Judge Baliles issued an order of dismissal. The order found there was probable cause for process to issue on the custodial interference charge. Nonetheless, the order went on to explain "[a]fter reviewing the documents, e-mails, and orders, this Court is of the opinion that a contempt of court proceeding in the Circuit Court is the proper remedy" (Court File No. 75-3, p. 2). Consequently, the order sustained Plaintiff's motion to quash the criminal summons.

Subsequently, Plaintiff commenced the present action. In his amended complaint he names three Defendants: Judge Baliles, Sellers, and District Attorney Steven Bebb. The crux of Plaintiff's claims is his contention Sellers was permitted to act as a "special prosecutor" at the December 16,

4

2008 hearing. According to Plaintiff, this was done in violation of the United States Constitution and Tennessee law. Plaintiff argues Bebb is liable for failing to train and control his assistants properly to prevent Sellers' wrongful appointment as "special prosecutor," Judge Baliles is liable for wrongfully allowing this appointment, and Sellers is liable for maliciously prosecuting him. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, and pleads supplemental jurisdiction for the pendant state claims.

### B. Procedural History

Early in this litigation, all three Defendants filed motions to dismiss (Court File Nos. 6, 8, & 11). On August 19, 2010, the Court entered an order ruling as follows: (1) the Court denied Sellers' motion to dismiss in its entirety because Sellers did not file a memorandum in support of his motion; (2) the Court dismissed all claims for monetary damages against Judge Baliles and Bebb on grounds of immunity and failure to state a claim under § 1983; and (3) the Court did not dismiss claims for injunctive and declaratory relief against Judge Baliles and Bebb. Following this ruling, Hopkins, Judge Baliles, and Bebb filed motions to alter or reconsider the judgment (Court File Nos. 25, 27, & 28). The Court has not ruled on these motions, and the present ruling will moot them.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574

(1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based merely on its allegations; it must submit significant probative evidence to support its claims. *See Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. ANALYSIS

#### A. Claims for Damages Against Sellers

Plaintiff advances two § 1983 claims for damages against Sellers: (1) Sellers violated Plaintiff's Fourteenth Amendment due process rights by acting as a special prosecutor at the arraignment hearing; and (2) Sellers maliciously prosecuted Plaintiff in violation of the Fourth Amendment. "In order to prevail on a civil rights claim under 42 U.S.C. § 1983, plaintiffs must establish [1] that a person acting under the color of state law [2] deprived them [3] of a right secured by the Constitution or laws of the United States." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010). Since § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred," the first step in any § 1983 claim "is to identify the

6

specific constitutional right allegedly conferred." *Albright v. Oliver*, 510 U.S. 226, 271 (1994) (quotation omitted).

### 1. Fourteenth Amendment Claim

In his first claim, Plaintiff argues his right to due process, as conferred by the Fourteenth Amendment, was violated by Sellers' wrongful prosecution of him. Plaintiff asserts the due process clause of the Fourteenth Amendment protects him from being criminally prosecuted by a private attorney, acting on behalf of the state, who has some personal interest in the prosecution. According to Plaintiff, this is precisely what Sellers' participation in the arraignment hearing subjected him to. Plaintiff also at times appears to argue that Sellers violated his Fourteenth Amendment due process rights by prosecuting him without probable cause. Additionally, Plaintiff argues that even if the Fourteenth Amendment does not directly confer the right not to be prosecuted by an interested private attorney, the due process clause of the Fourteenth Amendment protects a state law-created liberty interest in not being prosecuted by a private attorney who has not first been approved as qualified and free of conflicts in a court hearing.

### a. Liberty Interest Arising Under the Due Process Clause

It is unnecessary to determine whether or not Sellers was "acting under color of state law," or whether Plaintiff was "deprived" of a right, because Plaintiff cannot establish the existence of any relevant "right" arising directly under the due process clause of the Fourteenth Amendment which Sellers may have violated. Plaintiff does not, and indeed cannot, point to any binding authority stating prosecution by an interested prosecutor, without more, deprives a defendant of a liberty interest protected by the Fourteenth Amendment. In fact, the Supreme Court has specifically declined to construe this issue as one implicating due process.

In *Young v. United States*, 481 U.S. 787 (1987), the Supreme Court reviewed the convictions

of several petitioners who were found guilty of criminal contempt after being prosecuted by private, interested attorneys who had been appointed by the district court.[3] The Court reversed the convictions, holding it was "improper" for the district court to appoint interested counsel to conduct the contempt prosecution against petitioners. *Id*. at 814. Significantly for the present case, however, this decision did not turn on the Fourteenth Amendment, or any Constitutional provision for that matter. Rather than citing the Constitution, the Court instead relied solely on its inherent "supervisory power" to regulate judicial proceedings. *Id*. at 789. In fact, Justice Blackmun's concurrence specifically criticized the majority for not "go[ing] further" and "hold[ing] that the practice – federal or state – of appointing an interested party's counsel to prosecute for criminal contempt is a violation of due process." *Id*. at 814-15 (Blackmun, J., concurring); *see also Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 704 (6th Cir. 1985) (reversing the convictions of petitioners prosecuted by interested private attorneys, but making "this determination under our supervisory authority and [] not decid[ing] that such a proceeding constitutes a *per se* due process violation"); *Wilson v. Wilson*, 984 S.W.2d 898, 902-03 (Tenn. 1998) (holding "due process does not preclude allowing an attorney who represents the beneficiary of a civil court order to simultaneously prosecute a contempt action for an alleged violation of the order").

Furthermore, the Supreme Court has generally declined to analyze alleged pretrial deprivations of liberty under the due process clause of the Fourteenth Amendment. For example, in *Albright*, the petitioner brought a Fourteenth Amendment due process claim based on the alleged right "to be free from criminal prosecution except upon probable cause." 510 U.S. at 268. The Court held Fourteenth Amendment due process entails no such right, and explained the general

---

[3]In this case, the attorneys were counsel for a handbag manufacturer which previously sued petitioners for trademark infringement. That suit resulted in an injunction against petitioners. Petitioners' violation of this injunction gave rise to the criminal contempt litigation.

8

inapplicability of the Fourteenth Amendment to pretrial deprivations of liberty:

> As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.... Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims. We think this principle is likewise applicable here. The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.

*Id*. at 272-74 (quotations omitted). Accordingly, the Court held the Fourth Amendment, not the Fourteenth Amendment, is the proper "constitutional peg" on which claims of prosecutorial impropriety hang. *Id*. at 271 n.4, 275.

Following *Young* and *Polo Fashions*, this Court is unwilling to find in the due process clause of the Fourteenth Amendment a hitherto unrecognized right not to be prosecuted by an interested private attorney. Accordingly, to the extent Plaintiff's Fourteenth Amendment claim against Sellers relies on such a right, it must fail.[4] Likewise, following *Albright*, to the extent Plaintiff's Fourteenth Amendment claim relies on a right not to be prosecuted without probable cause, it must fail since this right implicates the Fourth, not the Fourteenth, Amendment.

### b. Liberty Interest Arising Under State Law

Even if Sellers did not violate a liberty interest arising directly from the due process clause of the Fourteenth Amendment, Plaintiff argues he violated a liberty interest arising from state law that is entitled to Fourteenth Amendment protection.

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation of interest created by state laws or

---

[4]The Court is not here holding that Sellers did, in fact, act as a "prosecutor" at the arraignment hearing.

9

policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). To determine whether the due process clause of the Fourteenth Amendment protects a state created interest, courts "must look not to the 'weight' but to the *nature* of the interest at stake." *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972) (emphasis added). The Sixth Circuit has described at length the proper analysis to determine whether a state created interest rises to the level of a constitutionally protected liberty interest:

> In determining whether state law creates a liberty interest protected by the due process clause, the initial inquiry is whether the state has used "explicitly mandatory language in connection with requiring specific substantive predicates" to place substantive limits on official conduct. *Hewitt v. Helms*, 459 U.S. 460, 472 (1983). If the statute uses explicit mandatory language and provides substantive predicates, the second inquiry is whether the state has mandated a specific outcome if the substantive predicates are met. *"Tony" L and "Joey" L v. Childers*, 71 F.3d 1182, 1185 (6th Cir. 1995); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). Procedural rights that do not require a particular substantive outcome are not liberty interests protected by the Fourteenth Amendment, even if the right is "mandatory."

*Gibson v. McMurray*, 159 F.3d 230, 233 (6th Cir. 1998).

Here, Plaintiff claims Tenn. Code Ann. § 8-7-401 creates a liberty interest protected by the Fourteenth Amendment. The statute reads:

**Employment of private counsel by crime victim – Participation as co-counsel in prosecution of crime.**

(a) A victim of crime or the family members of crime may employ private legal counsel to act as co-counsel with the district attorney general or the district attorney general's deputies in trying cases, with the extent of participation of such privately employed counsel being at the discretion of the district attorney general. The district attorney general or a deputy shall make the final and concluding argument. The privately retained counsel shall immediately inform the district attorney general of such counsel's employment.

(b) (1) No private legal counsel employed as a special prosecutor pursuant to subsection (a) is permitted to participate in any criminal hearing, trial or other proceeding unless the defendant or defendants have been notified and the court has conducted a hearing on such employment as provided in this subdivision (b)(2).

10

> (2) At such hearing, the defendant or defendants have the right to be present and to raise and preserve any objections to the employment of such special prosecutor as provided by law. The court shall examine the private counsel to be employed and shall make a specific finding as to whether such person is or is not qualified under the law to serve as special prosecutor and as to whether such person has or does not have a conflict of interest as provided by law.
>
> (3) Any allegations of prosecutorial misconduct or other defects in the trial committed or caused by the special prosecutor shall be raised and disposed of at the time a motion for new trial is made by the new defendant.

Plaintiff argues § 8-7-401 uses "explicitly mandatory language" ("No private legal counsel *is permitted* . . . . The Court *shall* examine . . .") in connection with "requiring specific substantive predicates" ("shall make a specific finding as to whether such person is or is not qualified under the law . . . and as to whether such person has or does not have a conflict of interest"), and "mandates a specific outcome if the substantive predicates are met," namely, no prosecution by the private counsel. Therefore, says Plaintiff, § 8-7-401 creates a liberty interest protected by the due process clause of the Fourteenth Amendment. Since no hearing was held before Sellers participated in Plaintiff's arraignment hearing, such participation violated Plaintiff's protected liberty interest, and Sellers is therefore liable under § 1983.

There are two fatal flaws to Plaintiff's argument. First, § 8-7-401 does not, in fact, mandate a specific substantive outcome. The statute undoubtedly uses mandatory language in requiring specific substantive predicates – a private attorney employed as a special prosecutor is simply not permitted to participate in a criminal hearing until the defendant has been notified and a hearing has been held to evaluate the attorney's fitness and conflicts of interest. However, the statute does not mandate any specific *substantive*, as opposed to procedural, outcome, because it does not state how the hearing must affect the outcome of the related criminal proceeding. The statute neither requires a defendant be convicted if the hearing requirement of § 8-7-401 is complied with, nor requires a

11

defendant be released from charges if a special prosecutor is employed without the requisite hearing.

The statute at issue here is quite similar to one considered by the Sixth Circuit in *Gibson v. McMurray* ("*Gibson II*"), 159 F.3d 230 (6th Cir. 1998). In *Gibson*, a plaintiff filed a § 1983 action against a police officer and police chief after he was arrested on a warrant that issued in contravention of state law. Michigan law required that "[a] magistrate shall not issue a warrant for a minor offense unless an authorization in writing allowing the issuance of the warrant is filed with the magistrate and signed by the prosecuting attorney." M.C.L. § 764.1(2). In this case, the warrant authorizing the plaintiff's arrest had not been signed by the prosecuting attorney. The district court held M.C.L. § 764.1(2) did not create a substantive liberty interest protected by the due process clause of the Fourteenth Amendment, because "[d]espite its substantive limitations on the magistrate's discretion to issue a warrant, the statute does not provide any specific result or outcome [if that statute is or is not complied with]." *Gibson v. Sain* ("*Gibson I*"), 979 F. Supp. 557, 564 (W.D. Mich. 1997). The Sixth Circuit agreed, finding "the statute does not provide any specific outcome . . . so plaintiff's procedural due process claim must fail." *Gibson II*, 150 F.3d at 233; *see also Levin v. Childers*, 101 F.3d 44, 46 (6th Cir. 1996) (finding no protected liberty or property interest in obtaining a statutorily mandated administrative review of an adverse Medicaid decision, because no substantive outcome was guaranteed to follow from such administrative review); *"Tony" L*, 71 F.3d at 1185-86 (finding no protected liberty or property interest arising from a statute stating an agency "shall initiate a prompt investigation [of child abuse allegations], take necessary action and shall offer protective services toward safeguarding the welfare of the child," because no particular substantive outcome was mandated to follow from this mandatory investigation process).

Like the statute at issue in *Gibson*, Tennessee's special prosecutor statute limits the

12

discretion of state courts. Just as the statute in *Gibson* forbade magistrates from issuing warrants that had not been signed by the prosecuting attorney, so § 8-7-401 forbids courts from permitting private counsel employed as special prosecutors to participate in criminal proceedings without first holding a hearing to determine the appropriateness of that counsel's participation. However, also like the statute in *Gibson*, § 8-7-401 does not mandate any specific substantive outcome if the hearing requirement is or is not complied with. As the statute in *Gibson* did not mandate a voiding of the warrant or reversal of a conviction based on the deficient warrant, so the statute at issue here does not mandate a substantive outcome such as dismissal of criminal charges if a special prosecutor participates in criminal proceedings without the court having first held the requisite hearing. Accordingly, the procedural right to a hearing created by § 8-7-401 is not one giving rise to a liberty interest protected by the due process clause of the Fourteenth Amendment.[5]

Moreover, even assuming *arguendo* that § 8-7-401 gives rise to a protected liberty interest

---

[5] Additionally, the Court notes it is unlikely Tennessee courts would regard a private attorney for the beneficiary of a civil custody order as having a conflict of interest disqualifying him from acting as special prosecutor in a criminal custodial interference action arising from a defendant's violation of that order. "[C]ustodial interference significantly overlaps with the [Tennessee] contempt statute." *State v. Smith*, No. E2009-00202-CCA-R3-CD, 2010 WL 5276902, *5 (Tenn. Crim. App. Dec. 17, 2010). In *Wilson*, the Tennessee Supreme Court disclaimed the reasoning of *Young*, and held that neither due process, nor ethical standards, nor any other equitable considerations "preclude allowing an attorney who represents the beneficiary of a civil court order to simultaneously prosecute a contempt action for an alleged violation of the order." 984 S.W.2d at 902-03. This ruling was based on two considerations: (1) contempt actions would rarely be brought if not brought by the beneficiary of the prior court order; and (2) in a contempt proceeding private counsel and the court have identical interests, namely, compliance with the court order. Considering that both contempt and criminal interference involve violation of a court order, *see Smith*, 2010 WL 5276902, at *4, and criminal contempt has a higher *mens rea* requirement than custodial interference, *see id.* at *7, it is probable that as with contempt actions, Tennessee courts would not disqualify a private attorney from prosecuting a custodial interference case merely because that attorney represents the beneficiary of a court order the violation of which underlies the criminal action.

13

in not being prosecuted by a private attorney who has not been properly vetted in the statutorily-mandated hearing, Sellers is not the agent responsible for depriving Plaintiff of this liberty interest without due process. To prevail on a § 1983 claim, a plaintiff must show not just that someone, but that the defendant specifically, deprived him of a constitutionally protected right. *See, e.g., Rush v. City of Mansfield*, No. 1:07-CV-1068, 2011 WL 609802, *3 (N.D. Ohio Feb. 11, 2011) ("[Section 1983] analysis begins with the familiar requirement that a specific defendant proximately caused the constitutional deprivation"). The statute at issue here is most plausibly read as placing certain obligations on the court, namely, to notify the defendant and hold a hearing for the purpose of examining the private counsel and determining whether he is qualified and free of conflicts such that he can properly act as special prosecutor in a pending criminal matter. The statute cannot plausibly be read as placing any obligation on the would-be special prosecutor. Indeed, if the statute obliged would-be special prosecutors to preemptively veto their own appointment if they determine they are unqualified or conflicted, there would be no need for a judicial hearing on the matter. Yet if the statute did not bind Sellers, it is axiomatic that Sellers could not have deprived Plaintiff of a liberty interest arising from that statute. Accordingly, even if Plaintiff possesses a protected liberty interest arising from § 8-7-401, which he does not, Sellers could not have deprived Plaintiff of this interest, and therefore cannot be liable under § 1983.

Thus, to the extent Plaintiff's Fourteenth Amendment claim against Sellers relies on a liberty interest arising under state law, it must fail.

### 2. Fourth Amendment Claim

In his next claim, Plaintiff argues Sellers maliciously prosecuted him, in violation of the Fourth Amendment. "The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim

14

of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (*quoting Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)). To succeed on a § 1983 malicious prosecution claim premised on the Fourth Amendment, a plaintiff must prove the following:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute.
>
> Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution.
>
> Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.
>
> Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes*, 625 F.3d at 308-09 (quotations and citations omitted).

Both Plaintiff and Sellers argue at length about whether or not there was probable cause supporting the issuance of summons and the arraignment hearing on the custodial interference charge. The issue is complex, involving collateral estoppel, interpretation of state statutes, and construal of written orders in light of corresponding oral judicial remarks. However, it is an issue that need not be decided, for there is a much clearer deficiency in Plaintiff's malicious prosecution claim: he has not alleged a "deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Sykes*, 625 F.3d at 308.

Though he was charged with custodial interference, Plaintiff was never arrested, never jailed, never detained, never required to post bond, and never placed under travel restrictions. The hearing

15

transcript reflects the possibility that Plaintiff might have to "book himself" within 10 days, although nothing in the record indicates Plaintiff ever was, in fact, booked. At most, then, the custodial interference charge caused: (1) a criminal summons to be issued to Plaintiff; (2) an arraignment hearing to be held during which the judge requested further briefing on Plaintiff's motion to quash summons; (3) the possible "booking" of Plaintiff; and (4) the quashing of the summons after the judge reviewed a round of briefing. Nothing in this sequence qualifies as a "deprivation of liberty" actionable under current Fourth Amendment jurisprudence.

Plaintiff cites no authority for the proposition that the issuance of a summons and the holding of an arraignment hearing is a deprivation of liberty sufficient to undergird a malicious prosecution claim. In fact, all authority supports the opposite conclusion. Courts have uniformly required some meaningful deprivation of liberty beyond mere summons and arraignment to support a Fourth Amendment malicious claim. For example, in *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995), the Second Circuit held that "to successfully pursue a § 1983 claim of malicious prosecution in violation of [the] Fourth Amendment," a petitioner "must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Id*. at 117. Similarly, the Third Circuit, quoting *Singer*, held that a plaintiff claiming malicious prosecution must show "some post-arraignment deprivation of liberty," and found that an 8-month period of incarceration following arraignment qualifies. *Torres v. McLaughlin*, 163 F.3d 169, 177 (3d Cir. 1998).

In *Mahoney v. Kesery*, 976 F.2d 1054 (7th Cir. 1992), the Seventh Circuit, in an opinion written by Judge Posner, considered a malicious prosecution claim on facts quite similar to the case at bar. There, the petitioner was a Marquette undergraduate against whom a summons was issued for obstruction of justice at the recommendation of a police office. Following the issuance of the

16

summons, the petitioner was arraigned before a county judge who found probable cause to prosecute. The petitioner was booked and a jury trial was scheduled, but on the day of trial the judge dismissed the charges upon the motion of the district attorney. The petitioner sued the officer for malicious prosecution. The Seventh Circuit, noting that "not every tort committed by public officers is actionable under the Constitution," opined that mere summons and arraignment is not a liberty deprivation of such magnitude as to implicate the Fourth Amendment. *Id*. at 1060. "[Petitioner] was required to (and did) appear for arraignment, but we do not think a required court appearance, any more than having to show up at the motor vehicle bureau to take a driving test in order to get a driver's license, is a sufficient deprivation of liberty to warrant the elevation of malicious prosecution to a constitutional tort." *Id*.

Most recently, in a district case out of our own circuit, the court held a plaintiff could not make out a malicious prosecution claim where misdemeanor complaints were filed against her, she was forced to stand trial, and the court granted her motion to dismiss following the close of the government's case in chief. *See Briner v. City of Ontario*, No. 1:07CV129, 2011 WL 866464 (N.D. Ohio March 9, 2011). The court noted that the plaintiff "was issued a summons; she was not arrested. There was no bond required and there is nothing in the record to suggest that she had any restrictions placed on her movements prior to trial." *Id*. at * 4. Relying on *Sykes*' requirement that a plaintiff suffer a "deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure," 625 F.3d at 309, the court held the plaintiff's "summons to appear for trial on misdemeanor charges did not amount to a seizure or detention within the meaning of the fourth amendment." *Briner*, 2011 WL 866464, at *4.

Following the univocal persuasive authority of courts that have considered the issue, the

17

Court concludes Plaintiff's criminal summons and the ensuing arraignment hearing did not constitute a deprivation of liberty cognizable under the Fourth Amendment. The most severe hardship Plaintiff suffered was his required attendance at the arraignment hearing, a circumstance best described as an annoyance rather than a deprivation of liberty of constitutional proportions. Consequently, because Plaintiff can show no actionable deprivation of liberty, his § 1983 claim for malicious prosecution must fail.

**B. Claims for Prospective Relief Against All Defendants**

On August 19, 2010, the Court entered an order dismissing all claims for monetary damages against Judge Baliles and Bebb on grounds of immunity and failure to state a claim under § 1983. However, the Court did not dismiss the claims for prospective relief, because Defendants did not file reply briefs addressing the arguments Plaintiff made in support of these claims in his response brief. Thus, at present two claims remain against Defendants:[6] (1) Plaintiff's claim for an injunction prohibiting Defendants from unlawfully subjecting him and other similarly situated persons to unlawful prosecution at the hands of a conflicted private attorney in violation of § 8-7-401; and (2) Plaintiff's claim for declaratory relief stating Defendants violated § 8-7-401, and further stating that in the future Defendants are not to allow a private attorney to serve as special prosecutor except as permitted by § 8-7-401.[7]

As already discussed, the due process clause of the Fourteenth Amendment does not confer

---

[6] It is not entirely clear from Plaintiff's complaint and briefing whether he asserts the same claims for prospective relief against Sellers as he does for Judge Baliles and Bebb. However, out of an abundance of caution, the Court will consider Plaintiff's claims for prospective relief to be stated against all three Defendants.

[7] Insofar as the injunctive and declaratory claims both ask the Court to order Defendants not to violate § 8-7-401 in the future, they are indistinguishable.

18

a right, either directly or indirectly vis-a-vis a liberty interest arising from § 8-7-401, not to be prosecuted by an interested private attorney. In other words, failure to comply with § 8-7-401 is not tantamount to failure to comply with the Constitution. Thus, Plaintiff's claims for injunctive and declaratory relief turn entirely on state law, and to the extent Defendants seek summary judgment on any federal claims for prospective relief the motions will be granted.

While this Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a), the Court also has discretion to decline to exercise supplemental jurisdiction where it has dismissed all claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c). Here, values of judicial economy and comity counsel exercising such discretion. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Thurman v. DaimlerChrysler*, 397 F.3d 352, 359 (6th Cir. 2004) ("We have previously held that when all federal claims have been dismissed before trial, the best course is to remand the state law claims") (citations omitted). The issue of whether § 8-7-401 prohibits the type of involvement Sellers had in Plaintiff's arraignment hearing – an issue essential to both the injunctive and declaratory claims – is a novel issue of state law that is best left to the expertise of state courts. Moreover, whereas this Court has virtually no interest in construing § 8-7-401, Tennessee courts have a paramount interest in construing a statute regulating so fundamental an issue as who may practice before them. Accordingly, the Court declines to exercise supplemental jurisdiction over all state law claims.[8]

---

[8]Moreover, the Court notes that the relief Plaintiff seeks would violate the Eleventh Amendment with respect to two of the three Defendants, *see Murray v. Ohio Adult Parole Authority*, No. 90-3071, 1990 WL 155692, *2 (6th Cir. Oct. 17, 1990) ("the eleventh amendment prohibits a federal court from ordering state officials to obey state law"); *George-Khouri Family L.P. v. Ohio Dep't of Liquor Control*, No. 04-3782, 2005 WL 1285677, *2 (6th Cir. May 26, 2005) ("There is no precedent suggesting that federal courts have jurisdiction over requests for a declaratory judgment that state officials are violating state law."), and with respect to the third Defendant would

19

## IV. CONCLUSION

For the above reasons, the Court will **GRANT** all Defendants' motions for summary judgment (Court File Nos. 62, 64, 66). This grant constitutes a **DENIAL** of Plaintiff's motion for summary judgment (Court File No. 35), and likewise **RENDERS MOOT** Plaintiff's motion for reconsideration (Court File No. 27), Bebb's motion to alter judgment order (Court File No. 25), and Judge Baliles' motion to alter judgment order (Court File No. 28). The Court will **DISMISS** all state law claims. As no further matters remain for adjudication, the Court will **DIRECT** the Clerk of Court to **CLOSE** the case.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

amount to enjoining and declaring that he may not violate a state law that this Court has already determined he did not – indeed *could* not – violate in the first place.